# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# PADUCAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) )  ) ) Case No. 5:99-CR-00018 (TBR) |
| v. | ) Case No. 5:00-CR-00015 (TBR) |
| | ) Case No. 5:00-CR-00017 (TBR) |
| KEVIN DENARD HUBERT, | ) ) ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant Kevin Hubert's *pro se* Motion to Reduce Sentence, Mot. to Reduce Sentence, Dkt. 59.[1] The Government has responded, Resp., Dkt. 65. Hubert subsequently filed a Motion for Reconsideration, Mot. for Reconsideration, Dkt. 67, and, with the help of counsel, a reply, Reply, Dkt. 77. The Government filed a supplemental response, Suppl. Resp., Dkt. 80. As such, this matter is ripe for adjudication. For the following reasons, **IT IS HEREBY ORDERED** that Hubert's Motion to Reduce Sentence, Dkt. 59, is **DENIED**, and Hubert's Motion for Reconsideration, Dkt. 67, is **DENIED** as **MOOT**.

### I.     FACTUAL BACKGROUND

On June 4, 1998, Kevin Hubert entered First People's Bank located in Knoxville, Tennessee. Presentence Investigation Report dated September 17, 2001 (PSR), Dkt. 57, ¶ 14. Once inside, Hubert walked directly to a teller, opened a box that contained a silver semi-automatic pistol, showed that weapon to the teller, and slid a note across the counter demanding 50- and 100-

---

[1] Hubert filed identical motions in three contemporaneous proceedings: *United States v. Hubert*, Case No. 5:99-CR-00018 (TBR); *United States v. Hubert*, Case No. 5:00-CR-00015 (TBR); and *United States v. Hubert*, Case No. 5:00-CR-00017 (TBR). Unless otherwise noted, citations refer to the docket entries in Hubert, 5:99-CR-00018.

dollar bills. *Id.* at ¶¶ 14–15. The teller gave Hubert approximately $4,750. *Id.* at ¶¶ 14, 16. Upon receiving the cash, Hubert left the bank. *Id.*

About two weeks later, on June 19, 1998, Hubert entered Banterra Bank in Paducah, Kentucky. *Id.* at ¶ 17. Hubert walked up to the teller and placed two plastic boxes on the counter. *Id.* at ¶¶ 17–18. Hubert then removed the top from one of the boxes, revealing a demand note. *Id.* As the teller read the message, Hubert opened the second box, which contained a small silver handgun. *Id.* Seeing the gun, the teller complied with Hubert's demands and gave him approximately $4,782. *Id.* Hubert then exited the bank. *Id.*

Just over two weeks after that, on July 6, 1998, Hubert entered another bank; this time, it was AmSouth Bank in Nashville, Tennessee. *Id.* at ¶ 19. Hubert carried with him a canvas bag and a plastic box. *Id.* at ¶¶ 19–20. He gave the teller a handwritten note demanding money and then opened the canvas bag, displaying a stainless-steel pistol. *Id.* After receiving approximately $4,170 from the teller, Hubert placed the cash into the plastic box and quickly walked away. *Id.* Hubert's license plate number was observed as he drove away. *Id.* at ¶ 21.

Eight months later, in March 1999, police identified a vehicle on Route 40, near Knoxville, Tennessee, as having a license plate that was purchased by Hubert. *Id.* at ¶ 22. FBI agents stopped the vehicle and arrested the driver, who was Hubert. *Id.* at ¶¶ 22–24.

Pursuant to a plea agreement, Hubert plead guilty to three counts of bank robbery and two counts of use of a firearm during a crime. Hubert was sentenced to 440 months, broken down as follows: 140 months for three counts of armed bank robbery, 18 U.S.C. § 2113,[2] 60 months for use of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1), and 240 months for a second

---

[2] Technically, Hubert received three distinct 140-month-sentences for each of his bank robberies. However, each of those sentences ran concurrently, meaning, in practical terms, that Hubert was only sentenced to 140 months for all three of his 18 U.S.C. § 2113 violations.

use of a firearm during a crime of violence, *id.*, all to be served consecutively. *See* Mot. to Reduce at 24. This sentence conformed with the Sentencing Guidelines, which at that time required that Hubert's multiple § 924(c) offenses be "stacked" on top of each other; that is, Hubert, a first time § 924(c) offender, had to serve an enhanced firearm sentence consecutively with his other sentences. *See id.* at 25; *see also* PSR.

In December 2018, Congress passed the First Step Act. The First Step Act amended 18 U.S.C. § 924(c)(1) such that the enhanced mandatory minimum penalty for a second or any subsequent § 924(c) conviction, 240 months at the time of Hubert's sentencing, but now 300 months,[3] applies only when an offender's first conviction under § 924(c) was "final" when the subsequent violation was committed. First Step Act § 403(a) (as codified at 18 U.S.C. § 924(c)(1)(C)). As a result, an offender without a previous final § 924(c) conviction who is charged with a second or subsequent § 924(c) conviction as part of the same indictment now faces a mandatory 60-month consecutive sentence, not an enhanced 240- or 300-month sentence.

Hubert would have benefited from this new sentencing policy. If Hubert had been sentenced after Congress passed the First Step Act, his second firearm count would have carried a mandatory term of 60 months, not 240 months. Thus, the sentence Hubert is serving (440 months) is 180 months longer than the sentence he likely would have received (260 months) if he were sentenced today. However, Congress did not make this part of the First Step Act retroactive, meaning that defendants like Hubert would not have their sentences automatically reduced.

---

[3] See Act of Nov. 13, 1998, Pub. L. No. 105-386, 112 Stat. 3469.

Hubert is currently 258 months into his 440-month sentence.[4]  Hubert requests relief under § 18 U.S.C. § 3582(c)(1)(A)(i).

**II.    DISCUSSION**

To obtain a sentence reduction from a district court, a defendant must exhaust his administrative remedies, as required by the First Step Act.  *See United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020).  Once a district court determines that the exhaustion requirement is satisfied, it must engage in a "three-step inquiry:" the court must "find" that "extraordinary and compelling reasons warrant [a sentence] reduction," ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and "consider[ ] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Jones*, 980 F.3d at 1101 (*citing* 18 U.S.C. § 3582(c)(1)(A)).  "If each of those requirements are met, the district court 'may reduce the term of imprisonment,' but need not do so." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (*quoting* 18 U.S.C. § 3582(c)(1)(A)).

   *A.  Exhaustion of Remedies*

"The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (*citing Jones*, 980 F.3d at 1100).  "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105.

---

[4] In his motion, Hubert states that he has served 252 months in federal prison.  *See* Mot. for Reduction at 37.  Because that motion was filed in April, the Court adds six months to Hubert's time served.

Here, Hubert has attached an early release request that he sent to the Warden on February 19, 2020. Ex. 1, Dkt. 59-1. Hubert claims he did not receive a response from the Warden. *See* Mot. to Reduce at 11. The Government states that it spoke with "an official with the Bureau Of Prisons" and was notified "that there had been no inmate administrative relief requests, specifically a Reduction in Sentence (RIS) request, by this Defendant." Resp. at 5–6. Ultimately, the evidence in the record indicates that Hubert did request early release and never received a response. Hubert filed his motion to reduce on April 9, 2020—more than 30 days after his early release request. Without any additional evidence from the Government, the Court concludes that Hubert has exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

Because Hubert has exhausted his administrative remedies, the Court now considers whether there are "extraordinary and compelling reasons" that justify a reduction of his sentence. "[D]istrict courts have discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 519–20. But "the mere fact that defining *extraordinary and compelling* 'is left to the district court's discretion . . . does not mean that no legal standard governs that discretion.' " *United States v. Hunter*, No. 21-1275, 2021 WL 3855665, at *4 (6th Cir. Aug. 30, 2021) (emphasis in original) (*quoting Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005)). Those words still have their ordinary meaning. *Id.* When Congress enacted the statute in 1984, " 'extraordinary' was understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.' " *Id.* (*citing* Webster's Third New International Dictionary: Unabridged 807 (1971)). And " '[c]ompelling' meant 'forcing, impelling, driving.' " *Id.* (*citing* Webster's Third New International Dictionary at 463).

Hubert argues extraordinary and compelling reasons exist due to (1) his age at the time of conviction; (2) the length of his sentence that resulted from his use of firearms, especially in light of the First Step Act; and (3) his rehabilitation. *See* Mot. to Reduce. The Court addresses each of these claims, in turn, below.

  1. *Age*

Hubert first argues that his young age at the time of sentencing supports a finding of extraordinary and compelling reasons for a sentence reduction. *See* Mot. to Reduce at 24. Hubert fails to cite authority from this circuit, relying instead on *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, (D. Utah Feb. 18, 2020), an out-of-circuit district court decision. However, it is this Court's duty to follow Sixth Circuit precedent, and in *United States v. Hunter*, 2021 WL 3855665, this circuit explicitly addressed whether a district court can consider a defendant's age in its extraordinary and compelling analysis.

"[F]acts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *Hunter*, 2021 WL 3855665, at *9. And a defendant's age when he committed a crime is a fact that existed at the time of sentencing, meaning that this is an impermissible factual consideration of whether extraordinary and compelling reasons warrant a sentence reduction under the compassionate release statute. *Id.* at *4, 9.

Hubert asks the Court to do exactly what it is not permitted to do—"reduce [his] sentence . . . because of his age at the time of conviction." *See* Mot. to Reduce at 24. Hubert was 27 years old when he committed this string of bank robberies; 28 years old when he was arrested; and 29 years old when he was sentenced. *See* PSR. Although Hubert was somewhat young then, the Sixth Circuit forbids the Court from using this factor to conclude that extraordinary and compelling reasons merit a sentence reduction.

### 2. *Length of Sentence*

Hubert next argues that extraordinary and compelling reasons exist because his sentence is longer than appropriate, particularly now that the First Step Act punishes similar offenders with much less time in prison. *See* Mot. to Reduce at 24. In support of this argument, Hubert cites three cases: *Maumau*, 2020 WL 806121; *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019); and *United States v. Brown*, 411 F. Supp. 3d 446 (S.D. Iowa 2019). *See id.* at 29–35. Again, all of these cases are out-of-circuit district court opinions. And again, the Sixth Circuit spoke about this specific issue in *Hunter*, 2021 WL 3855665. The Court follows *Hunter*, as it must.

In a series of recent cases, the Sixth Circuit has discussed whether sentencing disparities created by statutory changes are an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A). *See United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021); *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021); *United States v. Wills*, 991 F.3d 720 (6th Cir. 2021); *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021); *Hunter*, 2021 WL 3855665. In *Hunter*, its most recent decision on the matter, the Sixth Circuit explained that "non-retroactive statutory reforms in the First Step Act of 2018—as a matter of law—cannot be used to find 'extraordinary and compelling reasons' for a sentence reduction under § 3582(c)(1)(A)(i)." 2021 WL 3855665, at *5 (*citing Jarvis*, 999 F.3d at 445–46; *Wills*, 991 F.3d at 723–24; *Tomes*, 990 F.3d at 505). "Congress," according to the Sixth Circuit, "did not hide the authority to nullify the non-retroactivity doctrine in the words 'extraordinary and compelling reasons.' " *Id.* at *7.

Hubert claims that changes resulting from the First Step Act's amendment of § 924(c) can, either alone or in combination with other factors, constitute extraordinary and compelling reasons for a sentence reduction. *See* Mot. to Reduce at 24–35. Just one month ago, however,

7

the Sixth Circuit rejected this argument. Although the Court is sympathetic to Hubert's arguments, it is bound by the prior decisions of this circuit. The Court concludes that the sentencing disparity between Hubert's current sentence and his likely sentence under modern law does not help establish extraordinary and compelling reasons for a sentence reduction.[5]

### 3. *Rehabilitation*

Hubert's last argument for extraordinary and compelling reasons is that he has shown an "extraordinary degree of rehabilitation." Mot. to Reduce at 34. To demonstrate his rehabilitation, Hubert explains that he has "taught several A.C.E. classes," "worked in prison industries," "tutored," "maintained employment in food service," "maintained clear conduct for 20 years," and "worked his way from high security USP custody to F.C.I. medium custody." *Id.* Though the Government calls these accomplishments "admirable," Suppl. Resp. at 9–10, it argues that they do not justify a reduction in sentence because Hubert "has had two reported incidents" while in prison. Resp. at 8.

The Court does not evaluate the question of Hubert's rehabilitation in prison. "Congress was emphatically clear that '[r]ehabilitation of the defendant alone shall not be considered an

---

[5] The Court acknowledges that in *United States v. Owens* a divided panel of the Sixth Circuit held that "in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied." 996 F.3d at 763. Judge Thapar dissented, stating that a sentencing disparity resulting from the First Step Act's reforms is, "[f]or better or worse," an "ordinary practice," not an "extraordinary and compelling reason." *Id.* at 764–65 (*citing Dorsey v. United States*, 567 U.S. 260, 280 (2012)). It is also important to note that the court in *Owens* made special mention of the fact that the defendant there argued that extraordinary and compelling reasons existed, in part, because his lengthy sentence resulted from his decision to exercise his right to trial. *Id.* at 761. In other cases, however, the Sixth Circuit has taken a different approach. *Tomes* declared that courts cannot "us[e] § 3582(c)(1)(A) as an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms." 990 F.3d at 505. *Jarvis* made it clear that courts cannot "treat the First Step Act's non-retroactive amendments, whether by themselves or together with other factors, as 'extraordinary and compelling' explanations for a sentencing reduction." 999 F.3d at 445. *Hunter* held that any sentence disparity between a defendant, which did not exist at the time defendant was sentenced, does not constitute an "extraordinary and compelling" reason warranting a sentence reduction under the compassionate release statute. 2021 WL 3855665. Considering this legal landscape, the Court concludes that the weight of Sixth Circuit authority supports the *Hunter* decision, and as such, the Court will follow that approach. What's more, Hubert is unlike the defendant in *Owens* in that Hubert plead guilty to his crimes and does not allege that extraordinary and compelling reasons exist because his lengthy sentence resulted from his exercising his right to trial.

extraordinary and compelling reason.' " *Hunter*, 2021 WL 3855665, at *11 (*quoting* 28 U.S.C. § 994(t)). However, the Court does pause for a moment to applaud Hubert for his progress in prison—all of his achievements are, indeed, impressive.[6]

### 4. *Conclusion*

Neither Hubert's young age at the time of sentencing nor the non-retroactivity reforms of the First Step Act help establish extraordinary and compelling reasons. And rehabilitation alone is not an extraordinary and compelling reason. Thus, the Court concludes that extraordinary and compelling reasons do not warrant a reduction to Hubert's sentence of incarceration.

### C. *Sentencing Guideline Policy Statements*

Having determined that there are not extraordinary and compelling reasons that warrant a reduction in sentence, the Court next considers whether its conclusion is "consistent with applicable policy statements." 18 U.S.C. § 3582(c)(1)(A).

The Court agrees with the United States District Court for the Eastern District of Kentucky in stating that "[w]hile the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding," it still provides a "useful" point of reference. *United States v. Muncy*, No. 6: 07-090-DCR, 2020 WL 7774903, at *1 (E.D. Ky. Dec. 30, 2020). Congress provided no statutory definition of "extraordinary and compelling reasons" in § 3582(c)(1)(A). *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Instead, Congress directed the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to

---

[6] Hubert analogizes his case to *United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272 (S.D. Tex. June 24, 2019), a case involving a defendant's request to reduce his sentence. But even there, the court "[did] not consider [the defendant's] rehabilitation, by itself, as sufficient to constitute an extraordinary and compelling reason." *Id.* at *2 n.2. Rather, it determined that the defendant's rehabilitation was one of multiple factors that helped establish extraordinary and compelling reasons. *Id.*

be applied and a list of specific examples." *United States v. Adkins*, No. 5:18-058-DCR, 2020 WL 7755629, at *1 (E.D. Ky. Dec. 29, 2020) (*quoting* 28 U.S.C. § 994(t)). Those descriptions are found in § 1B1.13 of the United States Sentencing Guidelines (policy statement) and the application notes to that section.

This policy statement describes four categories of extraordinary and compelling reasons. The first three relate to an inmate's serious medical conditions, age, and status as a caregiver. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). The last category is a catch-all provision titled "Other Reasons," which reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

Hubert's argument for reduction is based on the "other reasons" category. *See* Mot. for Reduction. However, Application Note 3 reaffirms that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." In its analysis *supra* Part II.B, the Court explained that rehabilitation—the only one of Hubert's claims that can be used in this analysis—was not, on its own, sufficient to establish extraordinary and compelling reasons. Thus, the Court's analysis is consistent with the policy statement.

### D. Sentencing Factors

Even if Hubert was able to establish an "extraordinary and compelling reason," the relevant sentencing factors set forth in 18 U.S.C. § 3553(a) still weigh against his relief. *See Elias*, 2021 WL 50169, at *1 (*citing Jones*, 980 F.3d at 1101); *see also Ruffin*, 978 F.3d at 1005 ("Even if [the first two requirements] are met, . . . a district court may still deny relief if it finds that the applicable § 3553(a) factors do not justify it") (internal quotation marks omitted).

Those factors include:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];

    (5) any pertinent policy statement . . . by the Sentencing Commission;

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The "nature and circumstances of the offense" do not favor early release. *See* 18 U.S.C. § 3553(a)(1). The offenses for which Hubert is currently incarcerated are undoubtedly serious. Over a period of a month, Hubert robbed three banks, wielding a gun each time. These actions caused the bank employees to fear for their lives and put them in obvious danger. Through those actions, Hubert has shown that he is a danger to the community.

Additionally, Hubert's criminal history includes prior convictions for financial card theft, breaking or entering of a motor vehicle, having a loaded rifle in a vehicle, larceny by check, theft by deception, bank fraud, and possessing and uttering counterfeit securities. PSR ¶¶ 77–85. Hubert has also assaulted a correctional officer during a prison escape, *id.* ¶¶ 25–28, and

previously violated the conditions of his supervised release, *id.* ¶ 83. All of these facts cause great concern. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C), (a)(6).

The factors set forth in § 3553(a), to the extent that they are applicable, do not warrant the requested reduction of Hubert's sentence. Therefore, the Court finds that consideration of the applicable § 3553(a) factors calls for denial of the motion to reduce.

### E.  *Motion for Reconsideration*

In addition to his motion to reduce, Hubert filed a motion for reconsideration arguing that he has exhausted his administrative remedies and shown extraordinary and compelling reasons. *See* Mot. for Reconsideration. The motion for reconsideration focuses on why Hubert has exhausted his remedies, a position that the Court agrees with, *see supra* Part II.A. *See* Mot. for Reconsideration at 6–8. Because all of these issues are addressed in the Court's denial of Hubert's Motion to Reduce, Dkt. 59, Hubert's Motion for Reconsideration, Dkt. 67, will be denied as moot.

### III.   CONCLUSION

For the reasons stated **IT IS HEREBY ORDERED** that:

1) Defendant Kevin Denard Hubert's Motion to Reduce Sentence, Dkt. 59, 5:99-CR-00018 (TBR) is **DENIED**

2) Defendant Kevin Denard Hubert's Motion for Reconsideration, Dkt. 67, 5:99-CR-00018 (TBR) is **DENIED** as **MOOT**

3) Defendant Kevin Denard Hubert's Motion to Reduce Sentence, Dkt. 19, 5:00-CR-00015 (TBR) is **DENIED**

4) Defendant Kevin Denard Hubert's Motion for Reconsideration, Dkt. 26, 5:00-CR-00015 (TBR) is **DENIED** as **MOOT**

5) Defendant Kevin Denard Hubert's Motion to Reduce Sentence, Dkt. 15, 5:00-CR-00017 (TBR) is **DENIED**

6) Defendant Kevin Denard Hubert's Motion for Reconsideration, Dkt. 22, 5:00-CR-00017 (TBR) is **DENIED** as **MOOT**

**IT IS SO ORDERED**

*Thomas B. Russell* (signature)

**Thomas B. Russell, Senior Judge**
**United States District Court**

October 22, 2021